IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
IN ADMIRALTY
CIVIL ACTION NO.: _____

| | |
|---|---|
| NORTH CAROLINA STATE PORTS ) <br> AUTHORITY, ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> SSA COOPER, LLC, ROY MORRIS, ) <br> M/V CLIPPER MARIA, f/k/a THE ) <br> M/V LEHMANN FORESTER, IMO NO. ) <br> 9452323, her engines, boilers,) <br> tackle, etc., *in rem*, RIGEL ) <br> SCHIFFAHRTS GMBH & CO. KG, ) <br> PARAMOUNT ENTERPRISES ) <br> INTERNATIONAL, INC., MAXAM ) <br> UEB, SL, MAXAM INITIATION ) <br> SYSTEMS, LLC, MAXAM NORTH ) <br> AMERICA, INC., ) <br> Defendants. ) | **VERIFIED COMPLAINT** |

**NOW COMES** the Plaintiff, North Carolina State Ports Authority, and alleges as follows:

### NATURE OF THE ACTION

This is an action arising out of an international shipment and delivery of hazardous material cargo, Pentraerythritol Tetranitrate (hereafter "PETN"), to the Port of Morehead City, North Carolina, in January 2010. During the discharge of the cargo, it was discovered that PETN escaped from its containers. Plaintiff paid for the cleanup and remediation efforts and now seeks reimbursement from the parties responsible for the

1

shipment, delivery, unloading, and movement of the unsafe hazardous cargo.

## PARTIES

1. Plaintiff North Carolina State Ports Authority (hereafter "NCSPA") is an agency of the State of North Carolina organized and operating pursuant to North Carolina General Statutes §§136-260, *et seq.*, having an office at 2202 Burnett Boulevard, Wilmington, New Hanover County, North Carolina. The NCSPA operates maritime terminals at the Port of Wilmington in Wilmington, North Carolina, and the Port of Morehead City (hereafter "MHC") in Morehead City, North Carolina, as well as other facilities involved in the shipping of goods and cargo by ocean-going vessels.

2. Defendant SSA Cooper LLC (hereafter "SSA") is an entity organized and existing under the laws of Delaware, and has a (Registered) office at 120 Penmarc Drive, Suite 118, Raleigh, NC 27603, and is engaged in the business of providing stevedoring services to ocean-going vessels.

3. Upon information and belief, Defendant Roy Morris (hereafter "Morris") is a citizen and resident of North Carolina and at all times relevant, was employed by SSA as a stevedore or longshoreman through ILA #1807. Morris was the servant of and agent for SSA.

4. Defendant M/V CLIPPER MARIA, f/k/a THE M/V LEHMANN

2

FORESTER, IMO No. 9452323, her engines, boilers, tackle, etc., *in rem* (hereafter "Vessel"), is an ocean-going general cargo vessel that transports goods to and from various U.S. and foreign maritime ports. The Vessel undertook to transport PETN from outside of the United States and to MHC; upon information and belief, the Vessel may be within the jurisdiction of this Court during the pendency of this action.

5. Defendant Rigel Schiffahrts GmbH & Co. KG (hereafter "RSG") is a German entity with an office and place of business in Lubeck, Germany. At the time of the matters complained of herein, RSG was the owner, owner *pro hac vice*, or charterer of the Vessel and was the carrier of the PETN.

6. Upon information and belief, Defendant Paramount Enterprises International, Inc. (hereafter "Paramount") is a Pennsylvania corporation with a registered office address of 119 John Robert Thomas Drive, Exton, Pennsylvania 19341. At the time of the matters complained of herein, SSA was under contract with Paramount on behalf of Defendant Maxam Initiation Systems, LLC.

7. Defendant Maxam UEB, SL (hereafter "Maxam UEB") is a Spanish entity with an office and place of business in Barrio Zuazo S/N, Galdakao (Vizcaya), Spain. Maxam UEB was the manufacturer, shipper and/or owner of the PETN.

8. Defendant Maxam Initiation Systems, LLC (hereafter

3

"Maxam IS") is a Utah corporation with corporate offices located at 74 Dixon Road Sterling, Connecticut 06337, and with corporate offices and a registered agent address of 5505 S 900 E, Suite 300, Salt Lake City, Utah 84117. Maxam IS was the consignee and/or owner of the PETN.

9. Defendant Maxam North America, Inc. (hereafter "Maxam NA") is a Utah corporation with corporate offices located at 6975 Union Park Center, Suite 525, Salt Lake City, Utah 84047, with a registered agent address of 5505 S 900 E, Suite 300, Salt Lake City, Utah 84117. Upon information and belief, Maxam NA is the parent, principal, affiliate and/or agent of Maxam IS and/or was the consignee and/or owner of the PETN.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1333, 28 U.S.C. 1331, 42 U.S.C. 9601, *et seq.*, and has supplemental jurisdiction pursuant to 28 U.S.C. 1367 over claims so related to those claims within the original jurisdiction of this Court.

11. This action is or includes an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

12. This Court has jurisdiction over all parties in matter.

13. Venue is proper as the delivery and discharge of PETN

4

Case 7:12-cv-00008-BO   Document 1   Filed 01/11/12   Page 4 of 15

cargo, the release of PETN, and the damages as a result therefrom, occurred and were discovered in Morehead City, North Carolina.

**ALLEGATIONS**

14. On or about January 11, 2010, Vessel arrived at MHC carrying, in part, twelve (12) shipping containers with a total of 3,270 50 kg fiber drums of PETN, a 1.1D hazard class of explosives. The drums were loaded inside the containers on wood pallets.

15. According to a permit issued by the United States Coast Guard (hereafter "USCG"), the unloading of the drums of PETN at MHC was to begin no sooner than 1900 EST on January 11, 2010 and was to be completed no later than 0700 EST on January 12, 2010.

16. On or about 2300 EST on January 11, 2010, SSA began unloading the PETN from the Vessel. A forklift was used for the offloading. The skids or blades of the forklift were slid under the wood pallets with the drums containing the PETN remaining on the pallets.

17. Initially, more than one pallet at a time was being moved. Shortly after the commencement of the unloading, it was observed that the pallets on the bottom were breaking and it was suggested by the USCG, who were monitoring the unloading operations, that the forklift operator move only one pallet at a

5

time.  SSA complied and the operations continued.

    18.  On or about 0430 EST on January 12, 2010, and during the unloading process, Morris, in the course and scope of his duties as an employee of SSA, was operating a forklift when a blade of the forklift pierced several drums and also damaged surrounding drums.  Morris immediately stopped the forklift with the forks still in the drums, set the parking brake, and went to find Richard Smith (hereafter "Smith"), the SSA foreman in charge of the stripping operation.

    19.  The USCG instructed Smith to have Morris take the damaged drums out of the container and place them on the dock.  It was initially determined that nine drums were damaged in the accident.

    20.  Plaintiff's police department contacted the Morehead City Fire Department (hereafter "Fire Department") concerning the incident.  The Fire Department arrived at approximately 0450 EST on January 12, 2010 and sprayed the spilled PETN with water.

    21.  The United States Marine Corps' Explosive Ordinance Detachment from Cherry Point, North Carolina, was contacted and arrived at the scene of the accident at approximately 0730 EST on January 12, 2010.  MHC was closed, a voluntary evacuation of Morehead City, Atlantic Beach, and Beaufort, North Carolina, was ordered, Highway 70 near MHC was shut down and the USCG ordered all waterways leading to MHC within a four (4) mile radius to be

closed.

22. The NCSPA contacted Hepaco, Inc. (hereafter "Hepaco"), a company experienced with the removal and cleanup of explosive materials, to assist with remediation of the accident. Heapco arrived on the accident scene on January 12, 2010.

23. On January 13, 2010 during the unloading of the damaged drums, it was discovered that additional drums were leaking PETN. The USCG then ordered all drums of PETN shipped on the Vessel to be inspected. A total of 27 drums were found to be leading PETN.

24. All drums damaged in the accident and all drums found to be leaking PETN were properly secured, the accident site was cleared of spilled PETN, and all PETN was removed from MHC. MHC re-opened for business on January 14, 2010 at 1300 EST.

25. As a direct and proximate result of the damaged cargo, Plaintiff incurred clean up and mitigation costs, to date, in an amount in excess of $150,449.68 and expenses in an amount in excess of $9,151.48.

26. Plaintiff's loss was caused by the design, neglect and actual privity of the Defendants.

### FIRST CLAIM FOR RELIEF
### (Negligence)

27. Plaintiff incorporates and re-alleges the foregoing paragraphs of this Complaint.

7

28. The damages suffered by Plaintiff were the direct and proximate cause of Defendants' violations of their respective duties and obligations in the improper manufacture, packing, loading, stowing, shipping, carrying, transporting, unloading, discharging, delivering, moving, handling and caring (collectively, "Transport") of the PETN while it was within their respective ownership, possession, care, custody, and/or control and as effectuated and discovered at MHC.

29. Defendants failed to prevent and avoid the threatened and actual escape of an environmentally hazardous substance from their containers despite their duty and obligation to do so.

30. As a direct and proximate result of Defendants' negligence, Defendants' caused the cargo to be damaged and PETN to escape from containers.

31. Upon learning of the escape of PETN, Defendants failed or refused to remove, remediate and mitigate the environmental hazard and attendant damages despite their duty and obligation to do so.

32. Each Defendant was acting as the agent of the others with respect to the actions and inactions alleged herein.

33. Each Defendant failed to properly train, supervise and instruct the other Defendants despite their duty and obligation to do so.

34. SSA was the master, principal and/or employer of

8

Morris and is responsible for his negligence under the doctrine of *respondeat superior*.

35. As a direct and proximate result of Defendants' negligence, Plaintiff was damaged in an amount of at least $159,601.16, exclusive of attorneys' fees, costs and interest.

## SECOND CLAIM FOR RELIEF
### (Contribution/Indemnity)

36. Plaintiff incorporates and re-alleges the foregoing paragraphs of this Complaint.

37. Plaintiff discharged a liability of Defendants and is entitled to contribution and/or indemnity from Defendants as a result of and in order to restore Plaintiff for its loss.

## THIRD CLAIM FOR RELIEF
### (Nuisance)

38. Plaintiff incorporates and re-alleges the foregoing paragraphs of this Complaint.

39. Defendants caused a nuisance upon Plaintiff's MHC property by effecting the improper Transport of the hazardous material cargo.

40. Defendants' conduct substantially and unreasonably interfered with Plaintiff's use and enjoyment of MHC.

41. As a result thereof, Plaintiff suffered substantial injury and damages as shown herein and as may be shown at the trial of this matter.

## FOURTH CLAIM FOR RELIEF
### (Trespass)

42. Plaintiff incorporates and re-alleges the foregoing paragraphs of this Complaint.

43. Defendants intentionally trespassed upon Plaintiff's MHC property by effecting the improper Transport of the hazardous material cargo and, without permission of Plaintiff, causing the escape of PETN, a hazardous material, upon Plaintiff's MHC property.

44. As a result thereof, Plaintiff suffered substantial injury and damages as shown herein and as may be shown at the trial of this matter.

## FIFTH CLAIM FOR RELIEF
### (Unseaworthiness)

45. Plaintiff incorporates and re-alleges the foregoing paragraphs of this Complaint.

46. The Vessel was unseaworthy and otherwise unfit for the intended voyage.

47. Upon information and belief, the damages described herein occurred in whole or in part during and/or as a result of the carriage aboard the Vessel.

48. Plaintiff's damages, in whole or in part, were the result of the Vessel's unseaworthiness.

## SIXTH CLAIM FOR RELIEF
### (Breach of Contract)

49. Plaintiff incorporates and re-alleges the foregoing paragraphs of this Complaint.

50. The Plaintiff's expectations were that the cargo would be delivered safely to MHC.

51. Plaintiff provided a safe port for the shipment and complied with each and every agreement, duty and obligation owed to Defendants, if and as owed.

52. However, Defendants violated their obligations under each agreement and instrument (including, but not limited to, the contracts of carriage, affreightment, Liner Bill of Lading, tariff and any others; whether with each other for the benefit and protection of Plaintiff and/or directly with Plaintiff) concerning the Transport of the cargo.

53. As a result of Defendants' breaches, Plaintiff has been damaged as shown herein and as may be shown at the trial of this matter.

## SEVENTH CLAIM FOR RELIEF
### (42 U.S.C. 9601, *et seq.*, Comprehensive Environmental Response, Compensation, and Liability Act - "CERCLA")

54. Plaintiff incorporates and re-alleges the foregoing paragraphs of this Complaint.

55. Defendants are covered parties as defined in 42 U.S.C. 9607(a), (h) and are strictly liable to Plaintiff for damages

11

pursuant to 42 U.S.C. 9601, *et seq.*, including 42 U.S.C. 9607(a), (A)-(D) and 9613.

56. Plaintiff is entitled to its damages including an allocation of response costs among Defendants, Defendants being parties liable to Plaintiff under CERCLA.

### EIGHTH CLAIM FOR RELIEF
### (N.C.G.S. Chapter 143, Article 21A – North Carolina Oil Pollution and Hazardous Substances Control Act)

57. Plaintiff incorporates and re-alleges the foregoing paragraphs of this Complaint.

58. Defendants caused an unpermitted discharge of a hazardous substance, to wit: PETN into prohibited areas of and within the State of North Carolina.

59. Defendants had control over the PETN at the time of the discharge.

60. Plaintiff incurred damages in paying for cleanup and remediation of the discharge and threatened discharge.

61. Defendants are strictly liable to Plaintiff for the necessary expenses of hazardous substances cleanup projects and activities arising from the discharge, as well as civil penalties as shown herein and as may be shown at the trial of this matter.

### NINTH CLAIM FOR RELIEF
### (N.C.G.S. Chapter 166A, Article 2 – North Carolina Hazardous Materials Emergency Response Act)

62. Plaintiff incorporates and re-alleges the foregoing

12

paragraphs of this Complaint.

63. Defendants caused the uncontrolled release or threatened release of PETN, a hazardous substance.

64. Upon information and belief, such release required and resulted in the activation of a regional response team.

65. Defendants are responsible to Plaintiff for all reasonable costs incurred by Plaintiff and/or the regional response team in responding to and mitigating the incident.

**TENTH CLAIM FOR RELIEF**
(Unjust Enrichment)

66. Plaintiff incorporates and re-alleges the foregoing paragraphs of this Complaint.

67. As a result of the wrongful conduct of Defendants, Defendants have been unjustly enriched by Plaintiff having expended and endured costs and expenses relating to the cleanup and remediation of the hazardous materials release and threatened release on behalf of Defendants.

68. Plaintiff is entitled to restitution from Defendants.

**ELEVENTH CLAIM FOR RELIEF**
(Quantum Meruit)

69. Plaintiff incorporates and re-alleges the foregoing paragraphs of this Complaint.

70. Plaintiff is entitled to recover from Defendants the reasonable value of the goods and services provided and supplied on their behalf or caused to be supplied on their behalf by

13

Plaintiff relating to the cleanup and remediation of the hazardous materials release and threatened release.

**PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff prays:

1. For judgment against Defendants, jointly and severally, in an amount of at least $159,601.16, and such other and further damage it incurred as proven at trial.

2. For attorneys' fees, costs and interest as may be permitted by law.

3. For civil penalties as may be permitted by law.

4. For punitive damages as may be permitted by law.

5. That the Vessel, *in rem*, including her engines, boilers, equipment, tackle and appurtenances be condemned and sold to pay the sums sought herein.

6. That process in due form of law according to the rules and practices of this Court in causes of admiralty and maritime jurisdiction may issue against the Vessel and that all persons having or claiming any interest therein may be cited and required to appear and answer the matters aforesaid.

7. That this Court order, adjudge and decree that the Vessel pay to Plaintiff the aforesaid amounts due it.

8. That the Vessel be condemned and sold to pay the amount due to Plaintiffs.

9. That Process in due form of law issue against the *in*

*personam* Defendants citing them to appear and answer all and singularly the matters aforesaid and that this Court order, adjudge and decree that Defendants, jointly and severally, pay to Plaintiffs the aforesaid amounts due it, or any deficiency in said amounts existing after seizure and sale of the Vessel, together with interest thereon, expenses incurred in this action including the foreclosure on said Vessel, costs and reasonable attorneys' fees to be allowed to Plaintiff by the Court.

10. For such further relief, legal and equitable, as the Court deems proper in the premises.

This the 11th day of January, 2012.

ROY COOPER
Attorney General

/s/ Thomas M. Woodward
Thomas M. Woodward
Special Deputy Attorney General
N.C. Department of Justice
P.O. Box 9002
Wilmington, NC  28402
Telephone:  (910) 343-6424
Facsimile:  (910) 343-6237
Email:  matt.woodward@ncports.com